UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STACEY STANTON,<br><br>                     Plaintiff,<br><br>         v.<br><br>METRO CORP.,<br><br>                     Defendant. | Civ. Action No.  04-10751-FDS |

**DEFENDANT'S SUPPLEMENTAL BRIEF
IN SUPPORT OF MOTION TO DISMISS**

The question before this Court is whether, on the facts alleged in this case, the government may impose a damages award against a magazine for publishing the plaintiff's photograph to illustrate an article discussing teen sexuality.  Even when the plaintiff's allegations are viewed with every indulgence in her favor, such an award is constitutionally prohibited.  U.S. Const., Amdmt. 1; Mass. Decl. Of Rights, Art. 16.  That is because plaintiff cannot satisfy her burden of proving that *Boston* magazine negligently published any false statement of fact about her, or that it revealed any private fact about her.

**ARGUMENT**

**I.  The Article is Protected by the First Amendment and Article 16 of the Massachusetts Declaration of Rights.**

"When we confront the constitutional law of libel, … our primary concern must be the 'profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide open and that it may well include vehement, caustic and sometimes unpleasantly sharp attacks. . . . '"  Buckley v. Littell, 539 F.2d 882, 889 (2d Cir. 1976) (quoting New York Times v. Sullivan, 376 U.S. 254, 270 (1964)).  The United States Supreme Court has

1

recognized that this founding principle is not limited to speech about government or political expression. Rather, it extends to "the vast range of published matter which exposes persons to public view, both private citizens and public officials." Time, Inc. v. Hill, 385 U.S. 374, 388 (1967). "Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period." Thornhill v. Alabama, 310 U.S. 88, 102.

The plaintiff in this action would prefer that her photograph not have been used alongside a magazine article about the sexual mores of teenagers in eastern Massachusetts. However, the First Amendment urges extreme caution before this Court allows a case to proceed that would seek to punish the press for the use of her likeness. "Exposure of the self to others in varying degrees is a concomitant of life in a civilized community. The risk of this exposure is an essential incident of life in a society which places a primary value on freedom of speech and of press." Time, Inc. v. Hill, 385 U.S. at 408. As set out below, there was nothing in the use of the plaintiff's photograph that rose to the level of a false statement of fact, or the revelation of intimate private facts about her. Moreover, this Court may not allow this claim to go forward without a clear showing of negligence – a showing which, in light of the disclaimer next to the plaintiff's photograph, the plaintiff simply cannot make.

Even if the Court were to agree with plaintiff that the overall impression of the article casts her in a false light, that conclusion alone is insufficient to permit this case to go forward. As the Supreme Court noted in Gertz v. Welch,

> Although the erroneous statement of fact is not worthy of constitutional protection, it is nevertheless inevitable in free debate. As James Madison pointed out in the Report on the Virginia Resolutions of 1798: "Some degree of abuse is inseparable from the proper use of every thing; and in no instance is this more true than in that of the press." 4 J. Elliot, Debates on the Federal Constitution of 1787, p. 571 (1876). And punishment of error runs the risk of inducing a cautious and restrictive exercise of the constitutionally guaranteed freedoms of speech and

2

press. … The First Amendment requires that we protect some falsehood in order to protect speech that matters.

At hearing, plaintiff's counsel conceded that while plaintiff's claim might not be a strong one, still it should be permitted to proceed to discovery and trial. Because of the constitutional issues involved, however, the Court may not do so here, because the "threat of being put to the defense of a lawsuit … may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself." Cefalu v. Globe Newspaper Co., 8 Mass. App. Ct. 71, 74 (1979).

There need be no concern that allowing defendant's motion to dismiss would foreclose a recovery in all cases of this type. There may indeed be factual scenarios in which a plaintiff could proceed to trial on claims that her privacy was invaded, and her reputation harmed, by the media's negligent use of her picture in connection with an article discussing illegal or immoral activities. To proceed, such a case would have to be based on a negligent publication that makes a precise defamatory statement in clear reference to the plaintiff. Plaintiff's Amended Complaint, however, does not present such a case.

**II.    Plaintiff Cannot Succeed Based on the Unique Facts of this Case.**

Even based on the allegations viewed most favorably to the plaintiff, the following observations are incontestable:

- The photograph depicts nothing tortious. The photograph shows the plaintiff, dressed in a formal gown, at a high school dance. She appears to be looking at the photographer. With her are two male and two female students, all dressed formally. Nothing in the photograph suggests that the plaintiff is engaged in improper conduct, or reveals any private facts about her.

3

- <u>The photograph was lawfully taken.</u>  Plaintiff does not allege that the taking of the photograph itself was improper or unlawful, or even that she was not aware it was being taken – though she does say it was not "authorized" by her.

- <u>The photo essay does not imply false or highly offensive facts.</u>  The photograph that includes plaintiff is one of seven in the photo essay, depicting a total of 23 adolescents.  None depict any "sexual" activity beyond a kiss.

- <u>The headline does not imply false or highly offensive facts.</u>  The article and photo essay are headlined, "The Mating Habits of the Suburban High School Teenager."  A sub-head speculates that "your kids … might know more about sex than you do."

- <u>The article states opinions based on disclosed, newsworthy facts, the truth of which is not challenged.</u>  The article reports that recent studies, and months of interviews of Boston-area high school students, "suggest that today's eastern Massachusetts teens are both sexually advanced … and sexually daring."  It cites federal statistics indicating that in Massachusetts, 46 percent of high school boys, and 42 percent of high school girls, have engaged in sexual intercourse – meaning that most high-schoolers have <u>not</u> engaged in such activity.  Plaintiff has not alleged any false statement in the article itself.

- <u>The article is expressly not "of and concerning" the plaintiff.</u>  Nothing in the article refers to the plaintiff (or any of the photographed adolescents) by name or description.  Plaintiff lives and attended school in New Hampshire, whereas the article is about teenagers in eastern Massachusetts.  The caption next to the photograph that includes the plaintiff expressly confirms that she and the other teenagers pictured in the photo essay are "unrelated to the people or events described in this story."  Plaintiff has not alleged otherwise.

- <u>The caption does not allege any intimate or defamatory conduct by the plaintiff.</u>  The caption also says, accurately, that the photos "are from an award-winning five-year project on

4

teen sexuality by photojournalist Dan Habib." It does not suggest that plaintiff cooperated with, or volunteered for, that five-year project.

### III.     Plaintiff's Defamation Claim Cannot Succeed.

####     A.     The Magazine Did Not Publish Any False Statement of Fact About the Plaintiff.

As the Court acknowledged at hearing, the subject of defendant's publication – the sexual mores of eastern Massachusetts high school teenagers – is a matter of public interest. Therefore, plaintiff bears the burden of demonstrating that Metro Corp. negligently published a false statement of fact about her. Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 858 n.6 (1975); Brown v. Hearst Corp., 54 F.3d 21, 25 (1st Cir. 1995) ("The Supreme Court tells us that in a suit like this one against the media the burden is upon the defamed plaintiff to show that the statements are not true") (citing Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767 (1986)); Kibbe v. Henderson, 2001 U.S. Dist. LEXIS 23285 (D. Mass. 2001) ("The burden of proving the essential elements of a defamation claim is on the party bringing the claim") (citing Veilleux v. Nat'l Broadcasting Co., 206 F.3d 92, 117 (1st Cir. 2000)).

Plaintiff here cannot meet the burden of demonstrating that *Boston* magazine published a false statement of fact about her. There are three reasons. First, plaintiff cannot point to any specific fact conveyed by the publication. Second, plaintiff cannot show that any such allegedly defamatory fact was published "of and concerning" her. Third, she has not specifically alleged that such facts are false.

####     i.  No specific defamatory fact is conveyed by the publication.

The Massachusetts common law of libel has always required a plaintiff to allege not only that the supposedly defamatory words refer to him, but also, "if in themselves they do not make their meaning clear, to allege also what will show their defamatory character" – what in the

5

common law is referred to as "innuendo," which must be alleged specifically.  McCallum v. Lambie, 145 Mass. 234 (1887).  As the Supreme Judicial Court noted,

> The defendant is entitled to be informed by the declaration what is imputed to him, -- what injury he is said to have inflicted, and how he is said to have inflicted it.  If the meaning of the language is clear, and a charge that it was used of the plaintiff shows how it would naturally injure him, nothing more is necessary.  But if it is ambiguous, and, with an allegation that it was published of another, it is not apparent whether it was applicable to him, or whether it was applicable in a defamatory sense, or, if it was, in which of possible different defamatory senses, all such additional facts must be alleged as will make its meaning clear.  General allegations and innuendoes are not enough.

145 Mass. at 238 (sustaining demurrer to libel claim where it is not clear from the declaration how the allegedly defamatory words apply to the plaintiff).  See also Hanson v. Globe Newspapers Co., 159 Mass. 293, 296-97 (1893).  Modern cases retain the same requirement. "The test is … whether the charged portions [of the article] in context could be reasonably understood as describing actual facts about the plaintiff or actual events in which she participated."  If not, then those portions cannot support the plaintiff's libel or invasion of privacy claim.  Pring v. Penthouse International, Ltd., 695 F.2d 438, 442 (10th Cir. 1982) (holding that the doctrine applies to private figures as well as public ones).  Because defamation is a traditionally disfavored action in Massachusetts, some courts have even required that such claims be pleaded with particular specificity.  Dorn v. Astra USA, 975 F. Supp. 388, 395-96 (D. Mass. 1997) (quoting Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 583 N.E.2d 228, 231 n. 7 (1991)).

Although paragraph 12 of the Amended Complaint purports to list specific statements in the article, it does not explain which of those statements the plaintiff alleges are being used in reference to her, or what are the facts upon which she bases that conclusion.  Therefore, those allegations are insufficient as a matter of law to warrant plaintiff's claim.  See Lambert v. Providence Journal Co., 508 F.2d 656, 658 n.5, 659 (1st Cir. 1975) ("The innuendo cannot be

used to enlarge the meaning of the words actually used."). Moreover, most of the quotations in paragraph 12 are not actionable. Some are generalized statements of the quoted speaker's opinion ("I think that's a way to fight the whole 'bitches' and 'whores' thing"); others are the author's opinion based on disclosed facts ("high school is the new college"); some are rhetorical hyperbole ("everybody's having casual sex … really, everyone is a ho," although the article also states that fewer than half of all high-schoolers have had intercourse[1]); others refer to specific identified groups that do not include the plaintiff ("core group of jocks" at "Hingham High"). To the extent these statements do not express or imply actual defamatory facts, they cannot be the basis for a libel claim *by anyone*. See, e.g., Phantom Touring, Inc. v. Affiliated Publications, 953 F.2d 724 (1st Cir. 1992) (protecting opinion based on disclosed, true facts); Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122 (1st Cir. 1997) (holding that there can be no defamation recovery for "loose, figurative language that no reasonable person would believe presented facts," "exaggeration and non-literal commentary" (which the Court said "have become an integral part of social discourse"), and "rhetorical hyperbole" ("the coin of the modern realm")); Greenbelt Coop. Pub. Ass'n v. Bresler, 398 U.S. 6, 14 ("rhetorical hyperbole").

"An assertion that cannot be proved false cannot be held libelous." National Ass'n of Gov't Employees v. Central Broadcasting Corp., 379 Mass. 220, 230 & n.11 (1979) (quoting Hotchner v. Castillo-Puche, 551 F.2d 910, 913 (2d Cir. 1977). Whether a statement can ground a libel claim "depends primarily upon whether a reasonable person would … interpret it as providing actual facts" about the plaintiff. Veilleux v. National Broadcasting Co., 206 F.3d 92. 115 (1st Cir. 2000) ("only statements that are 'provable as false' are actionable"). Nothing in paragraph 12 suggests that it is stating actual facts about the plaintiff.

---

[1] If a defamatory implication is rebutted in the same article, the article is not actionable. Phantom Touring, Inc. v. Affiliated Publications, 953 F.2d 724, 730, 731 n.12 (1st Cir. 1992).

7

### ii. No allegedly defamatory fact conveyed is "of and concerning" the plaintiff.

Even if the statements set out in the Amended Complaint could be said to be factual, and even if they could be said to apply to specific individuals, they clearly do not apply to the plaintiff. Plaintiff has failed in establishing what the common law referred to as *colloquium* – a showing that the challenged statements refer to the plaintiff. Tobin v. Boston Herald-Traveler Corp., 324 Mass. 478, 487 (1949).

First, the photograph caption is express in stating that "[t]he individuals pictured are unrelated to the people or events described in this story" – a disclaimer that the plaintiff would have this Court utterly ignore. Plaintiff's strained argument requires the Court to assume that a reader saw and recognized the plaintiff's photograph in the opening spread of the article; failed to glance at the photo caption directly adjacent to it; but then read the entire text of the article and understood it to convey the meaning that the *plaintiff* engaged in particular activities discussed in the article – even though neither the plaintiff's name nor her description appear anywhere in the article.

Compounding the unreasonableness of plaintiff's argument is the fact that, by its express terms, the article purports to describe only high-schoolers in "eastern Massachusetts," whereas the plaintiff (as anyone who recognizes her face would likely know) resides and attended school in New Hampshire.

### iii. Plaintiff has not alleged falsity with specificity.

Plaintiff alleges, breezily, that "[t]he matters so published concerning the Plaintiff are false and defamatory" (Am. Complaint, par. 18), but it is far from clear what she is denying. What exactly is it that plaintiff will undertake to prove false in order to win her claim? Is it that she has never engaged in sex? Never participated in a "hookup" (which the article defines as

8

"anything from sexual intercourse or oral sex to serious touching or just kissing")? Never taken "the pill"? Never worried more about having kids than about contracting a disease? "[C]ommon sense repels any suggestion that there was a charge worthy or indeed capable of trial in the present situation." National Ass'n of Gov't Employees, 379 Mass. at 230 & n.11.

Where, as here, one cannot identify with assurance the *manner* in which the plaintiff is defamed, a libel claim cannot go forward. That the article has a tone or point of view that the plaintiff finds objectionable, is not enough. It must also make an articulable statement about the plaintiff. To paraphrase Buckley v. Littell, 539 F.2d at 894, "The search for the precisely articulable meaning of the statements [about Stanton] to the ordinary reader could only be, in a sense, an arbitrary one because of the ambiguous and sometimes even contradictory content of the terminology necessarily utilized" in the magazine article. The terms used in the article "are concepts whose content is so debatable, loose and varying, that they are insusceptible to proof of truth or falsity. The use of these terms in the present context is in short within the realm of protected opinion and idea under Gertz." Id. See also Mihalik v. Duprey, 11 Mass. App. Ct. 602, 606 (1981) (statements in newsletter, taken collectively, were "too vague and uncertain, and too fragile in impact" to be defamatory). "To permit the infliction of financial liability" upon *Boston* magazine for publishing this article "would subvert the most fundamental meaning of a free press, protected by the First and Fourteenth Amendments." Pring., 695 F.2d at 440..

> **B.    Dismissal of Plaintiff's Claim is Consistent With the Treatment of Other Juxtaposition Cases Under Massachusetts Law.**

The imprecise nature of the allegedly defamatory meaning of the defendant's statement (the "innuendo") and the lack of a basis for connecting those statements with the plaintiff (the "colloquium") are two factors that help distinguish this case from those in which a claim for photographic juxtaposition has been permitted to go forward toward trial. For example, in Louka

9

v. Park Entertainments, Inc., 294 Mass. 268, 271 (1936), on which plaintiff relies (Opp'n, p. 5), the plaintiff was expressly identified as a burlesque dancer by a banner placed across her photograph posted at the defendant's theater. There was no ambiguity about either the defamatory statement or its application to the plaintiff. Similarly, in Brauer v. Globe Newspaper Co., 351 Mass. 53 (1966), also cited by the plaintiff (Opp'n, pp. 4-5), the Supreme Judicial Court found that the subject of the photograph was identifiable to some acquaintances and was directly identified as "mentally retarded." In Mabardi v. Boston Herald-Traveler Corp., 347 Mass. 411 (1964), the plaintiff's picture appeared without explanation, illustrating a story that described an unnamed lawyer who engaged in wrongdoing. The implication that subject of the photograph was that miscreant lawyer was "not discouraged by any clarifying textual reference to the plaintiff," 347 Mass. at 414 – unlike this case, in which the photo caption expressly *disassociates* the plaintiff from the facts of the article. In Morrell v. Forbes, Inc., 603 F. Supp. 1305 (D. Mass. 1985), a caption described a picture of plaintiff as "smaller fry in a fishy business," in the context of an article about mob influence in the fishing industry – satisfying both the innuendo and colloquium requirements. As in Mabardi, the article in Morrell contained nothing to discourage the reader from associating the plaintiff with the defamatory matter in the article.

As noted at hearing, this case is an even stronger one for dismissal than Tropeano v. The Atlantic Monthly Co., 379 Mass. 745 (1980), which has strikingly similar facts: A young woman's photograph was used, without her name, to illustrate an article titled, "After the Sexual Revolution." There, like here, the plaintiff was not "personally mentioned, discussed or identified in the magazine article." 379 Mass. at 746. In addition, there was no allegation of extrinsic facts to show that "the words were intended to convey or would or could be understood to convey a derogatory meaning not on their face." Id. at 751 (quoting Colby Haberdashers, Inc. v. Bradstreet Co., 267 Mass. 166, 170 (1929)). The Court dismissed the claim. See also

10

Arrington v. The New York Times Co., 55 N.Y.2d 437 (N.Y. 1982) (affirming dismissal of claim against newspaper's Sunday magazine for using plaintiff's unidentified photograph on its cover to illustrate an article describing how middle-class blacks were "growing more removed" from poor blacks).  Stanton's Amended Complaint, now before this Court, presents a stronger case for dismissal than even Tropeano or Arrington, because in neither of those cases had the defendant magazine taken steps to expressly *disassociate* the plaintiff from the article – a function performed here by the disclaiming caption.

      **C.**      **Plaintiff's Claim Based on the Photo Caption Must Also Be Dismissed, Because the Caption Is Not Defamatory.**

Plaintiff takes issue with the caption, and particularly that part of it which says that the photograph including the plaintiff's likeness (along with the other photographs constituting the photo essay) is "from an award winning five year project on teen sexuality by photojournalist Dan Habib."  The caption cannot be the basis for a viable libel claim, because it is incontestably accurate.  See Memorandum in Support of Motion to Dismiss, Ex. B.  Plaintiff contorts the caption when she pretends to contradict it by saying that she was "not the subject of, nor did she participate in," the five-year project, and that she never authorized the use of her photo as part of that project.  (Am. Compl., ¶ 16.)  The caption did not describe her as an active participant in the project, but rather said only that the plaintiff's picture was one of the photographs published as part of the five-year project.  It does not allege that plaintiff engaged in any untoward activities, and the other photos in the photo essay do not suggest otherwise.  Therefore, that part of plaintiff's libel claim that is based on publication of the caption must also be dismissed.

### D.  Plaintiff's Claim Also Fails Because, As a Matter of Law, Defendant Was Not Negligent.

Massachusetts law, in keeping with the minimum demands imposed by the United States Supreme Court, requires a private-figure libel plaintiff to demonstrate negligence on the part of the media before she can recover for libel.  Though the Amended Complaint contains a bare allegation of negligence (Am. Compl., ¶ 10), as a matter of law the Court can conclude, based on the article itself, that the magazine has taken due care.  It did so by publishing the plaintiff's photograph with this article only after verifying that the photo had previously appeared as part of an essay on teen sexuality (see Ex. B to Defendant's Memorandum in Support of Motion to Dismiss) and only after adding a caption that expressly disassociates the plaintiff's photograph from the materials published in the article.  As a matter of law – as the First Circuit Court of Appeals has held – it does not matter that the plaintiff may object to her treatment in the magazine or consider it "gaudy journalism."  Brown v. Hearst, 54 F.3d at 26.  Because she does not point to any significant inaccuracies, nor to any "counterbalancing exculpatory evidence" that the magazine wrongfully withheld from the article, she cannot prevail on her libel claim.  Id.

## IV.  Plaintiff's Private Facts Claim Cannot Succeed.

The Amended Complaint refers in Count One to an alleged violation of Mass. Gen. Laws ch. 214, § 1B by portraying plaintiff in a false light.  Confronted with the Supreme Judicial Court's repeated pronouncement that the tort of false light invasion of privacy is not recognized under Massachusetts law, plaintiff modified that allegation at hearing, characterizing the claim instead as a straightforward violation of §1B, which prohibits interferences with privacy that are both "unreasonable" and "substantial or serious."  Mass. Gen. Laws ch. 214, § 1B; see Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 517-19 (1991).  That statute offers the plaintiff no relief, however, because it applies only where the defendant has

disclosed "facts" that are "about an individual" and are of a "highly personal or intimate nature," without any "legitimate countervailing interest." Bratt v. Int'l Business Machines Corp., 392 Mass. 508, 518 (1984). The photograph depicting plaintiff, even in juxtaposition with the article on teen sexual mores, does not disclose any specific facts about the plaintiff. See Canney v. City of Chelsea, 925 F. Supp. 58, 70 (D. Mass. 1996) (Young, J.) ("there is no evidence of any private facts, if any, that were disclosed about [plaintiff] by any of the defendants"). Even if it had, because the topic was newsworthy, such publication would be privileged and not the permissible subject of a private facts invasion of privacy claim. To succeed on a claim for invasion of privacy, the plaintiff must show not merely that private facts are revealed that would be highly offensive to a reasonable person, but also that "the public has no legitimate interest in the facts being disclosed." Doe v. Town of Plymouth, 825 F. Supp. 1102, 1109 (D. Mass. 1993) (cited in Ayash v. Dana Farber Cancer Inst., 7 Mass. L. Rep. 176 (Super. Ct. July 18, 1997); Restatement of Torts 2d, 652D. "When the subject-matter of the publicity is of legitimate public concern, there is no invasion of privacy." Restatement of Torts 2d, 652D, comment d. "Thus, in cases involving the media, 'newsworthiness' is a complete defense to an invasion of privacy action, even if the plaintiff establishes that private, offensive facts about her have been disclosed." Ayash, supra (citing Gilbert v. Medical Economics Co., 665 F.2d 305, 309 (10th Cir. 1981); Cefalu v. Globe Newspaper Co., 8 Mass. App. Ct. 71, 74 (1980)).

**V.      Allowing this Case to Go Forward Would Violate Constitutional Interests.**

The plaintiff might prefer that her photograph not have appeared in association with an article about teen sexuality. Some might consider the use of the photograph to be coarse or distasteful. Still, whatever one's views as to the editorial presentation of the piece, the magazine's article is "entitled to no less protection than other forms of expression." Fantasy Book Shop, Inc. v. City of Boston, 652 F.2d 1115, 1126 (1st Cir. 1981) (quoted in L.L. Bean,

13

Inc. v. Drake Publishers, Inc., 811 F.2d 26 (1st Cir. 1987)). That protection reflects "some tension … between the need for a vigorous and uninhibited press and the legitimate interest in redressing wrongful injury." Gertz, 418 U.S. at 342 (rejecting Justice White's view, in dissent, that the decision "trivializes and denigrates the interest in reputation," and renders ordinary citizens "powerless to protect themselves").

There is a temptation to make exceptions in particular sympathetic cases, thereby deciding, case by case, "whether the final judgment leaves fully protected whatever First Amendment values transcend the legitimate state interest in protecting the particular plaintiff who prevailed." Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 63 (1970). But this approach, the Supreme Court said in Gertz,

> …would lead to unpredictable results and uncertain expectations, and it could render our duty to supervise the lower courts unmanageable. Because an ad hoc resolution of the competing interests at stake in each particular case is not feasible, we must lay down broad rules of general application. Such rules necessarily treat alike various cases involving differences as well as similarities. Thus it is often true that not all of the considerations which justify adoption of a given rule will obtain in each particular case decided under its authority.

Gertz, 418 U.S. at 343-44.

Even the Founders were not always convinced that unlimited discussion of public issues would at all times be "for the benefit of all of us." See Levy, Legacy of Suppression; the phrase is from the Court's opinion in Time, Inc. v. Hill, 385 U.S. 374, 389 (1967) (quoted in Curtis Publishing Co. v. Butts, 388 U.S. 130, 149 (1967)). Nevertheless, it was the view of the Founders "that a free press would advance 'truth, science, morality, and arts in general' as well as responsible government." Curtis Publ'g, 388 U.S. at 147 (quoting Letter to the Inhabitants of Quebec, 1 Journals of the Continental Cong. 108.) As the Supreme Court ruled in the false light case of Time, Inc. v. Hill, 385 U.S. at 388 (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 271-72 (1964): "Erroneous statement is no less inevitable" in discussions of society and

14

morality "than in the case of comment upon public affairs, and in both, if innocent or merely negligent, '. . . it must be protected if the freedoms of expression are to have the "breathing space" that they need . . . to survive.'"

## CONCLUSION

For the reasons stated above and in the defendant's motion to dismiss, supporting memorandum of law, and reply, the Court should dismiss the Amended Complaint in its entirety.

        Respectfully submitted,

        METRO CORP.
        By its attorneys,


        __/s/  Robert A. Bertsche_____
        Robert A. Bertsche (BBO #554333)
        Amy E. Serino (BBO #643664)
        PRINCE, LOBEL, GLOVSKY & TYE LLP
        585 Commercial St.
        Boston, MA  02109
        (617) 456-8000
        (617) 456-8100 (fax)


Dated:  January 26, 2005