## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
STACEY STANTON,                          )
                                         )
        Plaintiff,                       )
                                         )        **Civil Action No.**
        v.                               )        **04-10751-FDS**
                                         )
METRO CORPORATION,                       )
                                         )
        Defendant.                       )
_____)

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

**SAYLOR, J.**

This is a civil action arising out of the unauthorized publication of a photograph of plaintiff

Stacey Stanton in *Boston* magazine, which is owned by defendant Metro Corporation.  Plaintiff

contends that the publication of her photograph in connection with an article on teenage sexuality

defamed her under Massachusetts law and constituted an invasion of her privacy under Mass. Gen.

Laws ch. 214, § 1B.  Pending before the Court is the defendant's motion to dismiss plaintiff's

claims pursuant to Fed. R. Civ. P. 12(b)(6) on grounds that neither the photograph nor the article

defamed plaintiff, and that her allegations fail to state a claim for invasion of privacy under

Massachusetts law.

## Factual Background

In May 2003, *Boston* magazine printed an article by Alexandra Hall on sexuality and

promiscuity among Boston-area teenagers.  The headline of the article is "The Mating Habits of

the Suburban High School Teenager."  Defendant's Memorandum, Exhibit A.  Above the headline,

in smaller lettering, is the subheading: "They hook up online. They hook up in real life. With prom season looming, meet your kids – they might know more about sex than you do." *Id.*

The basic thesis of the article is that high school has, over the last few years, become an increasingly fertile ground for sexual experimentation, and that contemporary teenagers "are both sexually advanced . . . and sexually daring." *Id.* The author reports that teenagers often shun committed relationships in favor of "quick and emotionally distant sex," and that a great deal of teenage sexual experimentation coincides with substance abuse. *Id.* "These days," she writes, it is common for "[s]ingle boys and girls with nothing to do [to] go in a group to a friend's house . . . drink or smoke pot, then pair off and engage in no-strings 'hookups.'" *Id.* The author also reports that sexual promiscuity is rampant; one teenager is quoted as saying, "But the truth is, everybody's having casual sex and pretty much everybody's doing it with multiple partners."[1]

The article states that the author bases her story on recent studies on teenage sexuality, statistics on teenage sexual activity and substance abuse, and months of interviews with students from high schools in the Boston area. Interspersed through the article are excerpts from the author's interviews with teenagers about their personal sexual experiences and views on sexuality.

A large photograph accompanies the beginning of the article and covers most of the first

---

[1] Among other things, the article reports that many teenagers do not consider oral sex to be "sex"; that teenagers have sex at parties in front of others; that teenagers have sex on school buses and at school; that they view Internet porn and engage in online cybersex; and that upperclassmen at one suburban school have sex with freshmen and sophomore girls because "they know it's easy ass." *Id.* The article also suggests that the abstinence movement is a failure, and indeed "seems to be causing a backlash"; that many teenagers ignore the risks of sexually-transmitted diseases, including AIDS; that teenagers are not accurately informed about sex and its possible consequences; that boys are becoming more sexually aggressive, and that teen rape is on the rise; that "a majority of girls under 16 report that their first sexual experience was forced"; and that parents "are overwhelmingly clueless about their kids' sexual experiences and knowledge." *Id.*

2

two pages.[2]  The photograph depicts five students at a high school prom, apparently congregated near an exit door.  The boys are dressed in tuxedos, and the girls are wearing formal dresses, makeup, and jewelry.  Three of the students are smoking cigarettes, and one is drinking from a plastic cup.  Plaintiff, the fifth student, is looking in the direction of the camera with an apparently friendly expression.  Her face and a portion of her body are clearly visible.  She is wearing a black sleeveless dress and is neither drinking nor smoking.

On the same page as the photograph, beneath the headlines and initial text, is the following caption and disclaimer:

> The photos on these pages are from an award-winning five-year project on teen sexuality by photojournalist Dan Habib.  The individuals pictured are unrelated to the people or events described in this story.  The names of the teenagers interviewed for the story have been changed.

*Id.*  These statements are italicized and printed in the smallest font on the page.[3]  Plaintiff is not named anywhere in the article.[4]

Six smaller photographs on subsequent pages of the article, without captions, comprise the remainder of the illustrations.  These photographs show two girls air-kissing; a girl and a boy in an embrace; a girl in a one-piece swimsuit holding a towel over her body as a boy in swim trunks looks in her direction; a male with what appears to be an inflated condom over his head; two males

---

[2] The article opens with a two-page spread in the middle of the magazine.  The large photograph that is the principal subject of this lawsuit covers all of the left-hand page and half of the right-hand page.  The headline, the subheading, the bylines of the reporter and the photographer, a small amount of text, and a caption and disclaimer take up the right side of the right-hand page.  Including photographs, the entire article is approximately six and one-half pages long.

[3] For the sake of convenience, the first sentence will be referred to as the "caption," and the second sentence as the "disclaimer."  The third sentence is only marginally relevant to the issues presented.

[4] Neither the complaint nor the article indicate plaintiff's age.  Based on the fact that the photograph depicts her at a high school prom, the Court assumes for these purposes that the plaintiff was a teenager at the time of the photograph.  The Court cannot, however, draw any conclusions as to whether plaintiff was a minor.

sitting by a pool while a female is swimming; a young woman sitting alone surrounded by what appears to be bustling people; and a male and a female kissing.

Plaintiff filed a complaint for defamation and invasion of privacy in the Worcester Superior Court on January 21, 2000.   Plaintiff states that she "was not the subject of, nor did she participate in "an award winning five year project on teen sexuality by photojournalist Dan Habib," and that she "never authorized the use of her photograph in conjunction with that project." Amended Complaint, ¶ 16.  The complaint further alleges that (1) she was defamed by defendant because (a) the juxtaposition of her photograph and the article "insinuated that [she] was a person engaged in the activity described in the article," and (b) the language of the caption falsely insinuated that plaintiff was part of "an award winning five-year project on teen sexuality;" and (2) that the publication of her photograph in conjunction with the article amounted to an invasion of her privacy and portrayed her in a false light in violation of Mass. Gen. Laws ch. 214 § 1B.  *Id.* at ¶¶ 8-9, 14-17.   Plaintiff claims to have suffered damages in the form of harm to her reputation and sense of personal dignity, humiliation, and emotional pain and mental anguish.  *Id.* at ¶ 19.

Plaintiff's action was removed to the District Court on diversity grounds on April 13, 2004. On June 6, 2004, defendant filed the pending motion to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## <u>Analysis</u>

## I.    <u>Standard of Review</u>

A court may not dismiss a complaint for failure to state a claim under Fed. Civ. P. 12(b)(6) "unless it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Judge v. City of Lowell*, 160 F.3d 67, 72 (1st Cir.

1998)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice can be taken.  *Nollet v. Justices of the Trial Court of Mass.*, 83 F. Supp. 2d 204, 208 (D. Mass. 2000) *aff'd*, 248 F.3d 1127 (1st Cir. 2000).  Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).

## II.     The Defamation Claims

In order to maintain an action for defamation under Massachusetts law, a non-public figure such as the plaintiff must allege facts to show that (1) the defendant made a statement "of and concerning" the plaintiff to a third party; (2) the statement was defamatory, meaning it could damage the plaintiff's reputation in the community;[5] (3) defendant was at fault in making the statement;[6] and (4) the statement either caused the plaintiff economic loss, or is actionable without proof of economic loss.  *See Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629-630 (2003); *see also Yohe v. Nugent*, 321 F.3d 35, 40 (1st Cir. 2003). [7]

---

[5]  In most cases, the statement must be false.  *Ravnikar v. Bogojavlensky,* 438 Mass. 627, 629 n.3 (2003).  Although Massachusetts, by statute, permits recovery for a truthful defamatory statement that was both published in writing (or equivalent) and made with actual malice, the scope of that statute is limited by the provisions of the First Amendment.  *Id.; see* Mass. Gen. Laws ch. 231, § 92.  Plaintiff here alleges that the statements at issue were false, and therefore the statute is not implicated.

[6]  "The level of fault required varies between negligence (for statements concerning private persons) and actual malice (for statements concerning public officials and public figures)."  Ravnikar, 438 Mass. at 630.

[7]  The First Amendment imposes certain requirements on defamation actions independent of any requirements established by state law.  *Veilleux v. National Broadcasting Co.*, 206 F.3d 92, 108 (1st Cir. 2000).  The First Circuit in *Veilleux* identified four such limitations:

> First, where the statements are uttered by a media defendant and involve matters of public concern, the plaintiff must shoulder the burden of proving the falsity of each statement.

Plaintiff contends that defendant made two separate defamatory statements.  First, she claims that, by juxtaposing her picture and the article, defendant improperly insinuated that she engaged in the conduct described in the article.  Second, she claims that the language of the italicized caption improperly suggested that she was part of an award-winning project on teen sexuality.

Defendant argues, in essence, that the challenged publication is not "of and concerning the plaintiff," and is not reasonably capable of a defamatory meaning, because the photograph does not portray plaintiff engaging in improper behavior; the accompanying article describes a variety of behavior, not all of which is misconduct, and none of which is ascribed to the plaintiff; and the disclaimer expressly states that the individuals photographed are unrelated to the events in the article.  Defendant also argues that it was not negligent, and that plaintiff has not alleged that defendant made a false statement of fact.[8]

There is no dispute that the photograph depicts the plaintiff.  Nor is there any dispute that the article contains certain statements about sexual misconduct[9] that, if attributed to the plaintiff,

---

Second, only statements that are "provable as false" are actionable; hyperbole and expressions of opinion unprovable as false are constitutionally protected.  Third, private individuals must prove fault amounting at list to negligence on the part of a media defendant, at least as to matters of public concern.  Fourth, a private plaintiff must prove "actual malice" to recover presumed and punitive damages for a statement involving public concern.

*Veilleux*, 206 F.3d at 108 (citations omitted).

[8] It is undisputed that the statements were published in *Boston* magazine, and therefore conveyed to third persons.  It is also undisputed that plaintiff is a private person (and therefore the appropriate standard of fault is negligence) and  that Metro Corporation is a media defendant.  The parties do not address the question of whether the statements are actionable without proof of economic loss.

[9] For the sake of convenience, and for want of a better term, the Court will use the phrase "sexual misconduct" to refer to sexual promiscuity and other forms of relatively extreme sexual behavior described in the article.  *See* Restatement (Second) of Torts § 569, comment f (using term "sexual misconduct" to describe various forms of illegal or improper sexual behavior, such as adultery).

are defamatory. What is in dispute is whether there is a connection between the two – that is, whether a reasonable person would attribute the behavior described in the article to the plaintiff. That question can be framed in two ways: whether the article is about the plaintiff at all (i.e., is it "of and concerning the plaintiff") or whether the photograph and statements together state something derogatory about the plaintiff (i.e., is it "reasonably capable of a defamatory meaning"). Because the two issues are factually and conceptually intertwined under the circumstances of this case, the Court will consider them together.

>   **A.      The Legal Standards**

>   >   **1.      "Of and Concerning the Plaintiff"**

Plaintiff is required to prove that the allegedly defamatory statement was "of and concerning" her. *Ravnikar*, 438 Mass. at 629. A statement is "of and concerning" the plaintiff if (1) defendant intended the statement to refer to plaintiff and it was so understood *or* (2) persons could reasonably interpret defendant's statement to refer to plaintiff and defendant was negligent in publishing it in such a way that it could be so understood. *ELM Medical Laboratory, Inc. v. RKO General, Inc.*, 403 Mass. 779, 785 (1989). Because plaintiff does not contend that defendant subjectively intended to make a defamatory statement about her, the Court will apply the objective component of the test.

A statement need not explicitly refer to the plaintiff in order to satisfy the "of and concerning" element of the claim. *See, e.g., Eyal v. The Helen Broadcasting Corp.*, 411 Mass. 426, 430 n.6 (1991); *New England Tractor-Trailer Training of Connecticut, Inc. v. Globe Newspaper Co.*, 395 Mass. 471, 482 (1985) (holding that it was a "question of fact whether the article reasonably could be understood as referring to [plaintiff], . . . although no explicit reference

to [plaintiff] is made"); *Lahr v. Adell Chemical Co., Inc.*, 300 F.2d 256, 259 (1st Cir. 1962) ("[I]t has never been held in defamation that a plaintiff must be identified by name"). Under certain circumstances, defendant's publication of plaintiff's picture, without identifying plaintiff by name, will suffice. *See Brauer v. The Globe Newspaper Co.*, 351 Mass. 53, 56 (1966); *Louka v. Park Entertainments Inc.*, 294 Mass. 268, 271 (1936).

In *Brauer*, the court reversed the dismissal of a defamation claim arising from the publication of the photograph of a minor in conjunction with an article on the plight of the mentally retarded. 351 Mass. at 54-55. Although plaintiff's features and facial characteristics were not visible in the photograph and plaintiff was not identified in the text of the accompanying article, the court held that the publication was "of and concerning" the plaintiff. *Id.* at 56. It rejected defendant's argument that no one could determine that the photograph depicted plaintiff, noting that the complaint contained facts showing that third persons had understood the publication to refer to plaintiff. *Id.*

Similarly, in *Louka*, the court held that plaintiff could maintain a defamation claim based on the display of her picture at the entrance of a burlesque theater, along with pictures of other performers and above the words "Oriental Beauties" and "Minsky's Midsummer Follies." 294 Mass. at 269-270. Plaintiff was an actress, not a burlesque performer, and had not authorized the use of her picture at the theater's entrance. *Id.* In finding for plaintiff, the court stated that "it is plain that the publication could have been made of and concerning the plaintiff even if the defendant knew nothing about the plaintiff. The use of her picture shows that." *Id.* at 271.

The challenged statement must nonetheless refer specifically to the plaintiff, not to some generalized group or class of which the plaintiff is a member. Generally, "an individual member of

8

the defamed class cannot recover for defamation unless the group or class is so small that the matter can reasonably be understood to refer to the member, or . . . the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member." *See Eyal*, 411 Mass. at 430 n.6.

Here, plaintiff is not claiming to be injured by the defamation of a group; she is not, for instance, contending that her reputation was maligned by defamatory statements made about suburban teenagers in general. Rather, her claim is premised upon the allegedly defamatory insinuation about her as an individual, which arose from the publication of her picture in connection with the article. *Compare, e.g., Church of Scientology of California v. Flynn*, 578 F. Supp. 266, 267-268 (D. Mass. 1984).

### 2.    "Reasonably Capable of a Defamatory Meaning"

Plaintiff is further required to prove that defendant's publication of plaintiff's picture in conjunction with its article on teenage sexuality gave rise to a statement that is reasonably capable of defamatory meaning. *See Jones v. Taibbi*, 400 Mass. 786, 791-792 (1987); *King v. The Globe Newspaper Co.*, 400 Mass. 705, 718 (1987). To be defamatory, the statement must "'hold the plaintiff up to contempt, hatred, scorn, or ridicule or tend to impair h[er] standing in the community, at least to h[er] discredit in the minds of a considerable and respectable class in the community.'" *Yohe*, 321 F.3d at 40 (quoting *Tartaglia v. Townsend*, 19 Mass. App. Ct. 693, 696 (1985)).

Generally, defamatory meaning is an issue of law to be decided by the Court. *Jones*, 400 Mass. at 792; *Albright v. Morton*, 321 F. Supp. 2d 130, 135 (D. Mass. 2004). If the Court determines that a reasonable person could interpret the statement as having both a defamatory and

non-defamatory meaning, the character of the statement becomes a question of fact for the jury. *Jones*, 400 Mass. at 792; *Albright*, 321 F. Supp. 2d at 135; *King*, 400 Mass. at 711-712 ("Statements alleged to be libelous must be interpreted reasonably").

In assessing whether a statement is capable of defamatory meaning, the Court must "examine the statement in its totality in the context in which it was uttered or published. [It] must consider all words used, not merely a particular phrase or sentence." *Myers v. Boston Magazine Co., Inc.*, 380 Mass. 336, 341-342 (1980) (quoting *Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980). In addition, the Court must give weight to cautionary terms used by the publisher of the statement. *See id.* at 342; *Aldoupolis v. The Globe Newspaper Co.*, 398 Mass. 731, 734 (1986).

"It not required that there be direct and explicit language tending to discredit the plaintiff," in order to state a viable defamation claim. *Mabardi v. Boston Herald-Traveler Corp.*, 347 Mass. 411, 413 (1964). An insinuation arising from the juxtaposition of printed words and pictures may be as actionable as a direct statement. *Id.*; *Thayer v. Worcester Post Co.*, 284 Mass. 160, 162 (1933) ("[P]ictures with the accompanying . . . printed words . . . might reasonably be found to tend to expose the plaintiff to contempt, to blacken her reputation or to bring her into disrepute, because of the implications of improprieties . . . .").

In *Mabardi*, the Supreme Judicial Court denied a motion to dismiss a defamation claim, finding that such a juxtaposition was capable of defaming the plaintiff. 347 Mass. at 413. The case involved an attorney who had testified before a committee investigating fraud in government payments and been thanked by the committee for refusing to take part in the scheme. *Id.* at 412. The next day, the defendant newspaper published his photograph, with his name in the caption,

beneath the headline "Settlement Upped $2,000 – $400 Kickback Told." *Id.*  Next to his photograph was a picture of a state negotiator who had been convicted of taking a $400 kickback. *Id.*  The text of the accompanying article made no reference to the attorney.  *Id.*  The court held that "[t]he inference could have been drawn by a large number of readers that the plaintiff was involved in the wrongdoing cited in the headline and discussed in the article." *Id.* at 414.  This inference was encouraged by the juxtaposition of plaintiff's picture with that of the state negotiator and the headline and story, and not discouraged by any clarifying textual reference to plaintiff. *Id.*

Similarly, in *Morrell v. Forbes, Inc.*, the defendant magazine printed a picture of plaintiff underneath the caption "The Boston Fish Pier: Smaller Fry in a Fishy Business," next to a picture of a fish market mobster and article on the presence of organized crime in fish markets.  603 F. Supp. 1305, 1306, 1307 (D. Mass. 1985).  The court held that the article was actionable because, "[a]lthough a reasonable person might conclude that the photograph of the plaintiff was merely a . . . picture of a fisherman," the "photograph taken together with the caption . . . and the accompanying text . . . [could] reasonably be construed to be defamatory."

By contrast, the court in *Tropeano v. The Atlantic Monthly Co.* affirmed dismissal of defamation claim based on defendant's use of plaintiff's photograph, without her permission, to illustrate a magazine article entitled "After the Sexual Revolution."  379 Mass. 745, 746 (1980). Plaintiff was not mentioned, identified, or discussed in the article, which dealt with modern sexual and social mores.  *Id.*  The court held that the plaintiff failed to state a defamation claim because the publication was not defamatory on its face – the photograph in question merely depicted four well-dressed women, including plaintiff, conversing in a group – and the plaintiff had not pleaded any defamatory innuendo arising from publication of her photograph in connection with the article.

*Id.* at 751.

**B.    The Claim Based on the Juxtaposition of the Photograph and the Article**

As noted above, there is no dispute that the photograph depicts the plaintiff.  Although she is not named, she is easily identifiable to any person who knows her.  *See Brauer*, 351 Mass. at 56.

Likewise, there is no dispute that the article contains statements of sexual misconduct that would be defamatory if attributed to the plaintiff.[10]  Statements falsely suggesting that a person is sexually promiscuous or sexually licentious are generally actionable as defamation.[11]   Restatement (Second) of Torts § 569, comment f ("It is actionable per se to accuse in libelous form either a man or woman of any sexual misconduct . . ."); *King v. Northeastern Publishing Co.*, 294 Mass. 369, 370-371 (1936) (upholding verdict for plaintiff because the challenged publication could be reasonably understood as charging her with unchastity or fornication).  Even in today's environment, such activities would "hold the plaintiff up to contempt, hatred, scorn, or ridicule or tend to impair h[er] standing in the community, at least to h[er] discredit in the minds of a considerable and respectable class in the community."  *Yohe*, 321 F.3d at 40.

The issue, instead, is whether a reasonable reader would make a connection between the photograph (which identifies her) and the statements (which are generally defamatory).  Here, unlike in *Tropeano*, plaintiff has specifically alleged defamatory innuendo arising from the usage of

---

[10] Whatever the exact boundaries of "reputable" sexual behavior in the modern world, defendant does not appear to dispute that it would be defamatory to attribute certain sexual behavior described in the article to plaintiff.  Indeed, the article derives its sensational quality precisely from the fact that a considerable segment of society would find such behavior in teenagers to be shocking.

[11] Because the issue arises in the context of a motion to dismiss, the Court will assume that the allegedly defamatory statements are false.

her photograph to illustrate an article on teenage sexuality and promiscuity.  In particular, she contends that the use of her photograph in context insinuated that she was involved in the sexual misconduct described in the article.

Unlike in *Mabardi* and *Morrell*, however, the offending publication in this case included a disclaimer stating that the "individuals pictured are unrelated to the people or events described in this story."  *Compare Morrell*, 603 F. Supp. at 1307; *Mabardi*, 347 Mass. at 414 (court noted that defamatory insinuation was not discouraged by any clarifying textual reference to plaintiff). Nonetheless, a disclaimer does not present an absolute barrier to plaintiff's ability to state a defamation claim.  *See Myers*, 380 Mass. at 342 (indicating that cautionary language is only one factor to be considered by the court in the assessment of defamatory meaning).  The Court must account for the disclaimer, but it cannot focus solely on such language to the exclusion of the other words, phrases, and pictures that comprise the challenged statement.  *See id.* at 341-342.

The Court will first consider the juxtaposition of the photograph and the text without the disclaimer, and then turn to the impact of the disclaimer.

### 1.    The Juxtaposition of the Photograph and the Text

The photograph at issue is the lead illustration for the article.  Together with the headline and subheading, it is intended to attract the reader's attention and interest, and draw the reader into the story.  Although defendant denies it, it seems apparent that the photograph was selected at least in part because of its suggestive nature and sexual implications.

The photograph depicts a group of teenagers dressing like adults and engaged in adult behavior:  the boys are wearing tuxedos; the girls are wearing gowns, makeup, and jewelry; three of the teenagers are smoking cigarettes; and one girl is holding a plastic cup that suggests the

13

consumption of alcohol.  Even taken out of its context in the article, the impression is one of

teenagers experimenting with adult behavior.  In context, and juxtaposed with the article and its

headline, the illustration is very plainly intended to convey the impression that teenagers such as

these are likely to have experimented in particular with adult sexual behavior.

Furthermore, the photograph obviously depicts, or is intended to suggest, an image of

teenagers at a high school prom.  It is not necessary to consider whether the ordinary reader would

make an implicit connection between a high school prom and sexual experimentation; the article

itself makes the connection explicit.  Above the headline of the article ("The Mating Habits of the

Suburban High School Teenager"), opposite the photograph, is the following subheading:  "They

hook up online.  They hook up in real life.  With prom season looming meet your kids – they might

know more about sex than you do."[12]

Defendant, however, denies that the photograph depicts or implies anything sexual.

According to defendant,

> Nothing in the photograph suggests that any of the students are engaged in illegal or
> improper behavior.  None of them are hugging, kissing, or touching . . . . Indeed,
> what is most striking about the photograph is how elegant, sophisticated, and mature
> the five students appear.

---

[12] The text of the article also includes the following passage:

> But make no mistake about it: Things today are very, very different in high school from the
> way they used to be. Not different from two or three generations ago, but different from just
> 5 or 10 years ago.  Kids may not be telling their parents so, but among their peers they are
> unflinchingly plain about it: Oral sex is the new second base.  When it comes to sexual
> experimentation, high school is the new college. *The prom, which will bring self-consciously
> attired teenagers to function rooms and high school gyms all around Boston and its suburbs
> this month, is no longer even remotely the traditional night of sweet discovery or coming of
> age.*  And sex, says Monica, a quiet-spoken 17-year-old student in East Boston, is the new
> kissing: "People just assume you do it, because most everybody is."

Defendant's Memorandum, Exhibit A (emphasis added).

Defendant's Memorandum at 2-3.

Defendant's arguments might be more compelling if the subject matter of the article were proms, or prom fashions, or teen smoking, or teen drinking, or anything else actually depicted in the photograph itself. The *entire* subject matter of the article is the sexuality of teenagers. The *only* connection between the photograph and the subject of the article is the implicit sexual connotation: that teenagers such as the ones depicted are engaging in sexual relations. The illustration need not be pornographic, or even overtly sexual, for that connection to be made. Put another way, why was *this* photograph used to illustrate *this* article about sexual misconduct, if there is no connection between the two? The editor who selected the photograph apparently thought that there was a connection; why wouldn't the average reader?

The very innocence of plaintiff's appearance, ironically, reinforces that conclusion. One of the central themes of the article is that teenagers from ordinary suburban homes, despite outward appearances, are in fact engaging in shocking sexual behavior. The use of a photograph of a wholesome-looking girl to illustrate that point can hardly be considered coincidental.

Likewise, the caption itself reinforces the implicit sexual connotation of the photograph. According to the caption, "The photos on these pages are from an award-winning five-year project on teen sexuality by photojournalist Dan Habib."[13] Any reasonable person reading that sentence would make the natural connection that the photograph has *something* to do with teen sexuality. Moreover, the most obvious and immediate conclusion that a reader would make is that the teens

---

[13] The complaint states that, contrary to the language of the caption, plaintiff was not the subject of and did not participate in an "an award winning project on teen sexuality by photojournalist Dan Habib," and never authorized the use of her photograph in conjunction with that project. Amended Complaint, ¶¶ 15-16. For the reasons set forth below, plaintiff's clam that the caption was itself independently defamatory fails to state a claim upon which relief can be granted.

depicted – who are wearing adult clothing and engaged in adult activities such as smoking and (possibly) drinking alcohol – are sexually active. This is not a far-fetched or imaginative connection: it is the logical and normal connection that an ordinary person would make. Why is the photograph part of a project on "teen sexuality," if the subjects of the photograph have nothing to do with sex?

It is a closer question, however, whether the photograph in context conveys the impression that plaintiff specifically is likely to have engaged in the specific types of sexual behavior outlined in the article. Defendant contends that the article describes a variety of conduct, only some of which would be considered derogatory:

> [T]here is a wide range of "activity" described in the article, some of it arguably harmful to reputation (such as "hooking up" with multiple partners) and some of it clearly not (such as attending a school prom, watching Britney Spears videos, abstaining from sex, vowing to avoid abusive relationships, or even lying about engaging in sex in order to defuse the pressure from peers who keep asking about it). Even if one could conclude that the article can somehow be read as referring specifically to the plaintiff, still there is nothing at all in it to suggest *which* of the "activity" discussed in the article should be ascribed to her.

Defendant's Memorandum at 11 (footnote omitted).

That argument grossly overstates the overall context and tenor of the article, which is written in a sensational tone and overwhelmingly, if not exclusively, concerned with teenage sexual misconduct. Even the relatively harmless conduct identified by defendant is presented in such a way as to underscore the principal theme of rampant and promiscuous sexuality among teenagers.[14] No reasonable person, reading the article, would come away with the impression that

---

[14] Thus, for example, the reference to Britney Spears videos is hardly meant to convey an aura of sexual innocence. The article identifies one potential cause of the "dramatic shift" in teenage behavior as "the intense sexualization of teen culture in recent years." Defendant's Memorandum, Exhibit A. It goes on to observe that, compared to the 1980's, there are "dramatically more suggestive images, lyrics, and videos," one example of which

16

most, or even many, teenagers are responsible and prudent in matters of sexual behavior.

It is true that the article does not ascribe any particular form of sexual misconduct to the plaintiff. Nonetheless, in context, it is difficult to avoid the inference that the person depicted in the photograph had engaged in *some* form of sexual misconduct. Virtually any one of the multitude of sensational sexual behaviors described in the article, if attributed specifically to the plaintiff, would suffice to state a claim for defamation; at the very least, the juxtaposition suggests that the person in the photograph engaged in promiscuous sexual behavior or advanced sexual experimentation. Surely it is not necessary to require more precision if plaintiff engaged in *none* of the identified sexual misconduct.

Defendants also attempt to dismiss plaintiff's argument as the product of a "flawed" syllogism: "The article says that teenagers are promiscuous; plaintiff is a teenager and is pictured next to the article; therefore the article says that the plaintiff is promiscuous." Defendant's Memorandum at 13 (emphasis omitted). But plaintiff's argument is substantially more than that. Plaintiff does not claim "group libel," based on the fact that she is a teenager; she is specifically identified, because her photograph accompanies and illustrates the article. *See Louka*, 294 Mass. at 271; *compare Operation Rescue National v. United States*, 975 F. Supp. 92 (D. Mass. 1997), *affirmed*, 147 F.3d 68 (1st Cir. 1998) (quoting *Eyal*, 411 Mass. at 430 n.6). Indeed, she is the central female figure in the most prominent illustration, not an unidentified member of a large and undifferentiated group.

---

is "Britney Spears singing about her virginity (or lack thereof) and doing a striptease on MTV." *Id.* Similarly, the reference to abstinence is in the context of the reported failure of the abstinence movement ("many teens consider abstinence a moot point"). *Id.* Even the reference to the avoidance of abusive relationships, in context, is reported as a reaction to the degradation of inappropriate or even forced sexual relationships.

17

To this point, the Court has ignored the disclaimer, and focused solely on the juxtaposition of the text and the photograph.  Based on that juxtaposition alone, a reasonable reader could conclude that the teenage girl depicted in the photograph is sexually active and engages in at least some form of sexual misconduct.

The Court turns, then, to the effect of the disclaimer:  "The individuals pictured are unrelated to the people or events described in this story."

### 2.    **The Disclaimer**

Although the disclaimer appears on the front page, it appears in the smallest font on the page, roughly half the size of the text of the article and a tiny fraction of the size of the headline.  It is thus relatively inconspicuous by deliberate design.  Clearly some percentage of the readers who see the article, particularly casual readers who only glance at it or skim it, will ignore the disclaimer.

Nonetheless, the disclaimer *directly* contradicts the otherwise-defamatory connection between the photograph and the text.  It states that the individuals photographed – who include the plaintiff – are "unrelated" to the people and events in the story.  For the Court to conclude that the photograph is defamatory, therefore, it must assume that a reasonable reader would overlook the disclaimer, misunderstand it, or fail to give it credence.

The Court, reluctantly, is unwilling to go so far.  The disclaimer is intended to be inconspicuous, but it is not unreadable, or readable only with magnification.  It is not buried in an ocean of fine print; rather, it is set off from the rest of the text by italicized print and a line of demarcation.  *Compare Mulina v. Item Co. Inc.*, 217 La. 842*,* 847 (1950) (article and headlines had no defamatory meaning because of three words in an explanatory paragraph, which were not in any way set apart from other material on the page).  It appears on the first page of the article, not in the

back pages, and is positioned near the attention-grabbing headlines and lead photograph. *See Cochran v. Indianapolis Newspapers, Inc.*, 372 N.E.2d 1211, 1217 (Ind. App. 1978) ("[t]he place and position of an item in a publication is to be considered" in determining whether an article implied a defamatory message).

It is, of course, true that the disclaimer might well be ignored by some percentage of casual readers; others, however, might read the material on the first page of the article before losing interest or flipping the page, particularly given relatively small amount text on the page. Certainly, the *reasonable* (or average) reader can be expected to read at least the first page of a six-page article. *See Mulina*, 217 La. at 847 (holding that an article and headline did not give rise to a defamatory statement because "one would hardly see the photograph without seeing the paragraph of explanation"); *see also Myers*, 380 Mass. at 341-342 (holding that statements could not be construed as defamatory because the reader's glance could not avoid headlines that indicated otherwise).

Thus, the Court is forced to conclude that the disclaimer adequately negates the defamatory connotations about plaintiff otherwise arising from the article and photograph, at least in the mind of a reasonable reader. *See Mulina*, 217 La. at 847 (publication did not injure the reputation of plaintiff; court explained that if it were to "limit its consideration only to the picture and headline" at issue, there would be "a likelihood of libel by implication," but that "the reader, after reading the explanatory item along with the pictures and headline" would see that plaintiff was not involved in disreputable conduct); *cf. Dworkin v. Hustler Magazine, Inc.*, 668 F. Supp. 1408, 1416 (C.D. Cal. 1987) (dismissing libel claim because the publication contained a disclaimer that "would put the reasonable reader on notice that the material [was], at least, of questionable veracity").

19

Although the Court has considered the disclaimer in context with the article and illustrations, this conclusion nonetheless puts a tremendous amount of weight upon a solitary sentence. The Court does not mean thereby to suggest that the media is free in all instances to use embarrassing or humiliating photographs of nonconsenting individuals without restriction, so long as a disclaimer is used. *See, e.g., Martin v. Johnson Publishing Co.*, 157 N.Y.S. 2d 409, 411 (1956) (verdict of defamation despite disclaimer, where disclaimer appeared in "very fine print at the bottom of the page with the table of contents" and legends on the same page associated plaintiff's picture with the story); *Esposito v. Cinema-X Magazine*, 6 Media L. Rep. 2492, 2494 (N.Y. Sup. Ct. 1981) (verdict of defamation despite disclaimer, where disclaimer, in fine print, stated that all photographs were posed for by professional models except as otherwise noted and that neither the photograph nor the words describing them were meant to describe the actual conduct or personalities of the models, but text beneath the plaintiff's picture implied that she did not fall within the coverage of the disclaimer).

But neither can the Court, in this specific context, uphold a defamation claim premised on the notion that the disclaimer must have been ignored or misunderstood. For that reason, the Court must conclude that the defamatory statements at issue are not "of and concerning" the plaintiff, and are not reasonably capable of defamatory meaning.

There is, nonetheless, much about that conclusion that is troubling. To begin, the subject of the photograph was a mere teenager, not a full-fledged adult. Compared with adults, teenagers are not only less experienced and less mature; they are also generally more sensitive, less confident, and more easily embarrassed or humiliated. It is not in the slightest bit surprising that a teenage girl would find the nonconsensual use of her photograph to illustrate an article on promiscuity and

20

sexual misconduct to be highly upsetting. The Court is, however, unaware of any case law suggesting that the unique vulnerability of teenagers (or children) provides them any additional protection under the law of defamation. Although that seems somewhat anomalous, given the greatly heightened legal protection provided to minors in other contexts, there appears to be no authority supporting a contrary position.

Likewise, the notion that plaintiff's appearance in "public" – that is, her attendance at her high school prom – made her fair game for the press gives the Court some pause. Of course, the press is given great latitude to use photographs taken in public places to illustrate articles on matters of public interest and to attract sales of magazines and newspapers. *See Time, Inc. v. Hill*, 385 U.S. 374, 388 (1967) (remarking that "[e]xposure of the self to others in varying degrees is concomitant of life in a civilized community" and that "[t]he risk of this exposure is an essential incident of life in a society which places a primary value on freedom of speech and of press"); *Themo v. The New England Newspaper Publishing Co.*, 306 Mass. 54, 58 (1940) (holding that the plaintiffs had no "absolute legal right to exclude from a newspaper any photograph of them taken without their permission" because "[i]f every person had such a right, no newspaper could lawfully publish a photograph of" a public scene).

Nonetheless, the use of plaintiff's photograph in this context appears to have been entirely gratuitous. The photograph was not used to illustrate an article about proms, or anything actually depicted in the photograph itself; it was used to illustrate a sensational article about relatively extreme forms of sexual behavior. It would have been easy to create an illustration with consenting subjects, or to obscure plaintiff's identity. Nor can this be said to be the product of newsgathering in haste; the publication is a monthly magazine, not a newspaper on a daily deadline, and

presumably there was ample opportunity for reflective and considered editorial judgment prior to the selection of a photograph that was certain to embarrass its teenage subjects.

The exercise of dubious judgment, however, is not the same as the commission of the tort of defamation.  Defamation actions are disfavored under the law, and the hurdles to proof of such a claim are very high.  In short, although the Court has considerable sympathy for the position of the plaintiff, her claim based on the juxtaposition of the photograph and the article does not state a claim upon which relief can be granted.

The Court will next turn to the remaining claim of defamation and the privacy claim, which require only a short discussion.

### C.    The Claim Based on the "Project on Teen Sexuality" Statement

As noted, plaintiff also argues that the caption (taken together with the photograph) is independently defamatory.  The caption states that "[t]he photos on these pages are from an award-winning five-year project on teen sexuality by photojournalist Dan Habib."  Defendant's Memorandum, Exhibit A.  Plaintiff asserts that this wording falsely suggests that she "was part of 'an award winning five year project on teen sexuality.'" Amended Complaint, ¶¶ 15-16.

The Court agrees that the wording of the caption is unfortunate and somewhat unfair, but finds that it does not rise to the level of defamation.  Even assuming that the average reader would assume that plaintiff participated in such a project, in the modern age, a person's mere involvement in a project on teenage sexuality would not bring them into disrepute.   At most, a reasonable reader would conclude that the plaintiff had agreed to participate in a photographic project on teen sexuality, not that she was herself sexually promiscuous or even sexually active.  The issue might be different, of course, if the statement conveyed more information about the nature of the project, its

22

findings, or the capacity in which plaintiff was involved in the project; but the mere suggestion that she participated is not enough. Accordingly, the Court finds that the first sentence of the disclaimer is not reasonably susceptible of a defamatory meaning, and will not support a claim of defamation.

### III.    The Invasion of Privacy Claim under Mass. Gen. Laws ch. 214, § 1B

In addition to her defamation claim, plaintiff alleges that the publication of her photograph constituted "an unreasonable, substantial and serious interference with [her] privacy in violation of Mass. Gen. Laws ch. 214, § 1B. *Id.* at ¶ 8. She further alleges that, as a result of defendant's interference with her privacy, she was portrayed in a false light in the public eye, and thereby suffered injury to her reputation. *Id.* at ¶ 9.

Mass. Gen. Laws ch. 214, § 1B is captioned "Right of Privacy," and provides in full that

> A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages.

Mass. Gen. Laws ch. 214, § 1B. Despite the disjunctive phrasing of the statute, it has been interpreted to provide a cause of action for invasions of privacy that are unreasonable, substantial, *and* severe. *See Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 517-519 (1991). The bulk of the cases decided under the statute have concerned the dissemination of allegedly private information about a plaintiff. *See id.* at 517 n.4. The SJC has also recognized a cause of action under the statute for intrusion into a person's private sphere. *Id.* at 519. However, invasion of privacy actions of the "false light" variety are not recognized in Massachusetts. *See, e.g, Albright*, 321 F. Supp. 2d at 140; *ELM*, 403 Mass. at 787.

Neither the complaint, nor plaintiff's opposition to defendant's motion to dismiss, make any

explicit reference to claims for revelation of private information[15] or for intrusion into plaintiff's

private sphere, or allege any specific facts to support such claims.[16]  The photograph does not, for

example, portray her in the ladies' room, or partially dressed, or in any other similar context that

would ordinarily be intended to be private.  Indeed, aside from the false light assertions, the

invasion of privacy claim rests on the bare allegation that the unauthorized publication of plaintiff's

photograph constituted an unreasonable, substantial, and serious interference with her privacy.

Amended Complaint, ¶¶ 8-9.  Plaintiff cannot press an invasion of privacy claim based solely on an

allegation that amounts to little more than a legal conclusion.

In essence, plaintiff attempts to advance a false light claim under Mass. Gen. Laws ch. 214,

§ 1B.  Such a claim is not recognized in Massachusetts, and accordingly must be dismissed.

---

[15] A claim for revelation of private information would be in some tension with plaintiff's defamation claim, which objects to the publication of a *false* statement about plaintiff.  *See id.*; *Riley v. Haar*, 292 F.3d 282, 298 (1st Cir. 2002) (stating that the court must assume that a fact is *true* for purposes of a claim for disclosure of private fact under New Hampshire law, otherwise there could be no disclosure of a fact).

[16] The tort of intrusion imposes liability for intentional intrusion upon the seclusion of another in his private affairs, if the intrusion would be highly offensive to a reasonable person.  *See generally* Restatement (Second) of Torts, ch. 28A, § 652B, comment a.  This form of invasion of privacy does not depend upon any publicity given to the person whose interest is invaded; the intrusion itself subjects defendant to liability.  *Id.*

Here, defendant published a photograph of plaintiff that was taken outside of a high school prom.  It is highly doubtful that the taking of the picture constituted an intrusion into plaintiff's private sphere, or an intrusion that was highly offensive to a reasonable person.  *See id.* at comment c (stating that pictures taken of persons in public places do not violate the right to privacy, even though they may be taken without the person's consent or may disturb the person).  Moreover, even if the Court were to assume that an intrusion occurred, it was apparently perpetrated by Habib (or his agents), not by the defendant.  Defendant's subsequent publication of the photograph does not implicate the tort of intrusion.

<u>**Conclusion**</u>

For the foregoing reasons, the complaint fails to state a claim upon which relief can be granted, and will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:   March 7, 2005